EDWARD A. STEINES v. KATHRYN STEINES, Appellant.—89 S. W. (2d) 520.

Division One, January 11, 1936.

336

*James Booth* and *David W. Breid* for appellant.

*H. A. Krog* and *T. P. Hukriede* for respondent.

GANTT, P. J.—Plaintiff seeks title to lot one in Dieckmann Addition, Washington, Missouri, conveyed by him to his wife, the defendant. Judgment for plaintiff and defendant appealed.

The petition alleged that defendant fraudulently contrived a scheme to obtain said lot and other property from plaintiff. It alleged specific conduct and statements of defendant in furtherance of the scheme, including a statement by defendant to plaintiff that she would be a true and faithful wife, and that they would live happily in the house on said lot until they were parted by death.

The answer admitted that plaintiff and defendant were married; that at the time plaintiff was the owner of the lot, and denied other allegations of the petition. Further answering, it alleged that after the marriage plaintiff conveyed the lot to defendant for a valuable consideration and that she is now the owner of said lot.

Defendant contends that the petition does not state a cause of action. The contention proceeds on the theory that the promise to "be a true and faithful wife" is not a misrepresentation of an

existing fact, and for that reason could not be the basis of an action for fraud. But said promise as alleged is only a circumstance to be considered with other alleged statements and conduct of defendant in determining the question of fraud. She cites Reed v. Cooke, 331 Mo. 507, 55 S. W. (2d) 275. In that case the gravamen of the complaint was that plaintiff was induced to buy shares of stock by a promise of defendants to effect his election as general manager of a bank. In this case the gravamen of the complaint is the alleged fraudulent scheme contrived by defendant to obtain plaintiff's property. Furthermore, in that case the parties dealt at arms length. In this case a confidential relation existed between the parties. The contention is overruled. In substance the facts follow:

Plaintiff was seventy-five and defendant thirty-one years of age. He had not married. In 1920 she married Ernest Goodman. He divorced her in 1925. In 1926 she married Harry Hargis. He divorced her in 1929 and remarried her in thirty days.

Plaintiff resided on Fifth Street in Washington, Missouri. On March 1, 1931, he rented rooms to Hargis. Mrs. Hargis attracted plaintiff, who became interested in her and loaned money to her husband. They occupied the rooms for four months and then moved to the Calvin Apartments on Second Street in Washington. On August 29, 1931, Mrs. Hargis divorced Hargis. At the hearing plaintiff testified that she was of good character. Mrs. Hargis continued to reside at said apartment. Plaintiff paid the rent, furnished vegetables and gave her money for food. She phoned for him to come to the apartment and do chores for her. In December, 1931, they agreed to be married. She refused to name a day for the marriage and stated she thought divorce was as bad as death and that she could not marry until a year after the divorce. She wanted an automobile. He gave her a $634 automobile and $17.50 to pay for the license. She cried and told plaintiff that Dr. Mays would attach the car if she did not pay a bill she owed him. Plaintiff answered that he agreed to marry her and that he would not permit the doctor to attach the car. He gave her $290 to pay the bill. She told plaintiff she paid the bill but had not done so. Later defendant moved to New Haven and resided with Mrs. Adolphus Phillips. Plaintiff visited her in New Haven and met her when she came to Washington. She wanted a home. Plaintiff told her he had a home on Fifth Street. She thought of adding a kitchen to said home and rearranging the use of other rooms in the house. However, she objected to the neighbors. Thereupon they visited several residences for sale and on July 7, 1932, plaintiff purchased a home for $3500. Defendant moved her furniture into the home on August 2, 1932. In anticipation of the marriage and on July 8 and August 4, 1932, they purchased furniture at a cost to plaintiff of $425. Defendant and Mrs. Phillips occupied the home. On August 10, 1932, plaintiff and de-

fendant went to the county seat for the license. On entering the courthouse defendant told plaintiff that she wanted a deed to the property purchased for the home. She said: "If you don't want to do that I just as leave quit right here." Plaintiff told her that if she would be an honest and true wife he would take care of her and convey the home to her. She said that she would be honest and true to him until they were parted by death. On procuring the license they were married. On August 12, 1932, plaintiff conveyed the home to defendant. At the time they executed wills giving the property of each to the other. The wills, deed and other papers were deposited in plaintiff's box at the Bank of Washington. Defendant was given a key to the box. In a few days defendant removed her will, deed and other papers from the box. After the marriage defendant wanted to trade for another car. Plaintiff consented and paid the difference amounting to $150.

They occupied the same room the first three nights. Defendant refused sexual intercourse and stated that Dr. Mankopf told her she should not do so. After the first three nights defendant slept in another room. The door separating the rooms was locked by defendant. From that time either Mrs. Phillips or Helen Schauwerth occupied the room with her. About two weeks after the marriage plaintiff inquired of the doctor about the condition of his wife. The doctor testified that he commenced treating defendant two or three weeks before the marriage for an inflammation of the bladder; that at the time sexual intercourse would have been injurious to defendant, and that this condition continued from four to six weeks. On the question plaintiff testified that the doctor told him that at the time of the marriage it was better for defendant not to indulge in sexual intercourse, but that defendant had recovered. The women left home at night and refused to tell plaintiff their destination. Usually they returned at eleven-thirty P. M. On one occasion they returned at one A. M. On another occasion at seven A. M. Plaintiff was not permitted to accompany them. At the city park they danced with men with whom they were not acquainted, and left in the company of these men. On another occasion they were seen in a parked automobile at the side of a street in the company of men. Defendant referred to plaintiff as "old Santa Claus" and stated to others that he thought he had married her; that she did not think so and that she knew what she was doing. On September 26, 1932, defendant told plaintiff "to get out and stay out." She advised him to sue for a divorce and stated that he had good grounds to do so. She told him to leave and board with his cousin Emma. He told her that he did not have the money to pay board. He had his old furniture moved from the home to his old home on Fifth Street. She told him that he could not return. On that day she purchased a bedroom set

for $169. He refused to pay the bill. Later the merchant removed the set from defendant's home.

The rule is stated in the annotation to Veeder v. Veeder, 29 A. L. R. 191, l. c. 210, as follows:

"If at the time of the transfer or gift of property to one spouse by the other, by way of gift or postnuptial settlement, the former does not contemplate keeping the marriage vows and the intention to violate them is subsequently carried out, the weight of authority supports the proposition that this conduct constitutes such a fraud on the innocent spouse in the inception of the transaction as will be a ground for avoiding it."

The annotator cites cases supporting the rule, including Turner v. Turner, 44 Mo. 539.

It is clear that the marriage ceremony was a mere sham. The defendant had no affection for plaintiff and never intended to cohabit with him as a wife. As stated, "she knew what she was doing." From the beginning she fraudulently contrived to obtain his property. By deceit and imposition she did so. After doing so she cast him adrift with orders that he should never return. The case was well ruled, and the judgment should be affirmed. It is so ordered. All concur.