CARL DICKSON, APPELLANT, v. EMMA DICKSON, RESPONDENT.—101 S. W. (2d) 774.

Kansas City Court of Appeals. February 1, 1937.

*Hunter & Chamier* and *Roy Hamlin* for appellant.

*John D. Taylor* for respondent.

SHAIN, P. J.—The question involved in this cause arises out of a proceeding in the probate court to discover assets.

Willis G. Dickson, now deceased, in 1923 loaned $1500 to Roy Dickson and wife, which loan was evidenced by a note. At the time the note was executed and delivered the following indorsement was made thereon: "At my death, this note is to become the property of Alice Dickson, my wife. Signed Willis G. Dickson."

The above note was paid in part and on March 10, 1926, the above note was cancelled and a new loan made for the sum of $3000 and note therefor was duly signed by Roy Dickson and wife.

. On the reverse side of this note is indorsed as follows:

"Assigned to Emma A. Dickson without recourse.

W. G. Dickson."

"Paid $180.00 interest to March 10-27."

"Paid $180.00 interest to March 10-28."

"At my death this note is to become the property of my wife, Emma A. Dickson."

It appears that in May, 1926, Willis G. Dickson executed a will wherein the $3000 note in question was bequeathed to his wife Emma A. Dickson. Emma A. Dickson was designated as "Executor."

In this will Carl Dickson, a grandson, and outside of the widow, the only heir at law of Willis G. Dickson, was not mentioned.

In August, 1928, Willis G. Dickson died and his aforesaid will was duly probated. Thereafter inventory was made, however, the $3000 note in issue was not inventoried.

Thereafter the appellant herein, Carl Dickson, his grandfather having died intestate as to him, filed proceeding in the probate court to discover assets. Thereafter hearing was had in probate court and issue was found against the appellant. An appeal was taken to the Circuit Court of Chariton County, Missouri, and change of venue was taken and cause sent to Randolph County, Missouri.

Trial was by jury in the Randolph Circuit Court and the jury, as to the $3000 note, found against appellant and found that Emma A. Dickson, the widow, was the owner of the $3000 note in issue. The transcript filed herein states that judgment was entered in accordance with the verdict. The transcript shows that an appeal was granted to the Supreme Court.

By stipulation of the parties, the Supreme Court transferred the cause to this court.

The appellant, in taking this appeal, has shown but little consideration to the rules of this court. The printed record filed does not contain a bill of exceptions. The record proper does not set forth respondent's answer and does set out the judgment of the trial court. Further, an abridgment of the record is made by printing part in narrative form and wherein the narrative is in the language of counsel stating conclusion as to what witness testified to, instead of narrative in language of the witness. Other parts of the evidence is shown by question and answer.

Upon an examination of appellant's brief, we fail to find a single assignment of error. However, under points and authorities, appellant presents *arguendo* as to "gift *inter vivos*," delivery, indorsement, burden of proof and as to instructions altered by the court and so given.

The respondent filed a motion to affirm the judgment, by reason of the above stated defects. We conclude that respondent's motion to affirm must be sustained. However, as respondent in her brief invites further consideration, by admitting that the issue of gift *inter vivos* is presented and by conceding that there is sufficient showing from which to determine as to whether an issue of fact on that question is presented, we have carefully examined the record and conclude that the judgment is entitled to be affirmed on the merits. So finding, we feel that it is not out of place to here discuss from the standpoint of the merits and give our conclusions as based upon the showing of facts.

518

The general rule in Missouri as to gift *inter vivos* is well established. We quote from appellant's brief as follows:

"To constitute a valid 'gift *inter vivos*,' there must be a voluntary, gratuitous and ABSOLUTE TRANSFER OF THE PROPERTY FROM THE DONOR TO DONEE EFFECTIVE IMMEDIATELY and fully executed by delivery to and acceptance by the donee." [Lohnes v. Baker, 137 S. W. 282, 156 Mo. App. 397.]

Such has been declared the law by every appellate court of this State. However, the question of valid gift *inter vivos* is a question of fact to be determined by the trier or triers of the fact. [Cremer v. May, 8 S. W. (2d) 110.]

There is no question but what respondent's husband, from the inception of the note, intended it as a gift to his wife to take effect after his death. Such intention is expressed by his will and by his indorsement first made on the note. Such, however, was not a completed gift.

The question arises in this case as to whether or not the husband in his lifetime expressed an intent of immediate gift and whether or not there was any delivery or change of possession so as to perfect a gift of the note in his lifetime.

The above presents a question of fact in this case. Touching such issue of fact, the courts of this State recognize a somewhat different rule than is applied in those cases where family relations do not exist.

In Missouri the doctrine as laid down in Davis v. Zimmerman, 40. Michigan 24, has been quoted and commented upon with approval. The doctrine as laid down in the above case and quoted and approved by our courts, is as follows:

Ch. J. Cooley, in Davis v. Zimmerman, 40 Mich. 24, speaking to a state of facts quite similar to these at bar, said: "The question of change of possession must be considered in connection with the other facts in the case. It is no doubt true that in respect to the property in general there was no open and visible change of possession. But how could there have been? The donor and donee were living together as husband and wife, at a public hotel. Must she separate from him in order to be competent to receive from him a gift? If he gives her a picture or an article of furniture, must she procure it to be kept by some one else instead of placing it in her own apartments? . . . No doubt the circumstances of the relation, and the facility with which frauds may be accomplished under the pretense of sales or gifts between husband and wife ought to be carefully weighed, in determining whether or not a gift has been made, but when all are considered, the one question, and the only question is, whether the wife has established her right by a fair preponderance of evidence; if she has, no court has any right to require more." "

Judge PHILIPS of the Kansas City Court of Appeals in Schooler v. Schooler, 18 Mo. App. 1. c. 76, says:

"The matter of change of possession is often necessarily a relative question. Regard must be had to the relation of the donor and the donee, and the situation of the property. It would be unreasonable, as it might be utterly impracticable, for the wife, receiving such gifts from the husband, to take it away and keep it at other place than the common home."

An opinion by Judge ELLISON of this court, Fair v. Wynnee, 155 Mo. App. 341, quotes from the Michigan case, supra, and cites Schooler v. Schooler, supra, and in the course of the opinion says: "The sufficiency of possession necessarily depends on the circumstances surrounding the parties and the necessity of the situation."

The principle stated above has been approved by the Missouri Supreme Court by a majority opinion in banc Harvey v. Long, 260 Mo. 374, 1. c. 384-5 of the above opinion it is said:

"The real question in the case arises upon the delivery of the deed from Mr. Harvey to his wife. In coming to the consideration of this we are met at the first step by the relationship of the parties. They are husband and wife; members of a single family of which he is, in contemplation of law, the director and head. They are the natural agents, each of the other, in the performance of the duties of their respective positions. It would exhibit the same superfluity of caution in the wife of a business man to keep a strong box of her own for the safe keeping of her important papers, as for a man to keep in office or kitchen a separate repository in which he might personally control the food provided for the idiosyncrasies of his own palate. Care and watchfulness of her property interests come as naturally within his province, as do care and watchfulness of the menage within hers. Paraphrasing the oath of The Three Musketeers, it is, in their relation, both for one, one for both. This relation ought to be and is considered in determining whether a deed remaining in the physical custody of the grantor husband has been delivered to the wife. [Rumsey v. Otis, 133 Mo. 85, 96.]"

On pages 386 and 387 of the above opinion is found the following:

"It is not necessary it should be handed over actually to the grantee, or to any other person for him. It may be delivered under certain circumstances, though it remain in the possession of the maker." In the case last above cited the learned Commissioner quotes from the language of Judge SPENCER in Jackson v. Phipps, 12 Johns. 421, as follows: 'This delivery must be either actual, by doing something and saying nothing, or else verbal, by saying something and doing nothing; or it may be both; but by one or both of these it must be made; for otherwise, though it be never so well sealed and written, yet is the deed of no force.' In the same case he quotes from Burt v. Cassety, 12 Ala. 734: 'It is of no importance whatever that the

vendee was not present when the deed was made. She is presumed to assent to it as the deed was for her benefit.' The same idea has been approved by this court (Crowder v. Searcy, supra), in a quotation from Bryan v. Wash, 2 Gilm. 568, in its application to conveyances by those standing in a confidential relation to the grantee, as follows:''

With the language quoted in mind, we proceed to an examination of the evidence to determine as to whether there was an issue of fact for the jury. In doing so, it is our duty to examine the evidence in its most favorable light to respondent.

As to the assignment to the wife without recourse, shown on the back of the note, there is evidence from which it can be reasonably inferred that the assignment was made some months before the death of the husband and after the indorsement of interest payment to March 10-28.

Considering the gift as expressed in the will of 1926 and as before expressed on the reverse side of the note when given, we conclude that the later indorsement, making a straight out assignment, is evidence of an intent of the husband to change the gift, from as before expressed, to a present gift.

It appears that the assignment of the note in question was made in the Glasgow Savings Bank of Glasgow, Missouri. The following questions and answers appear in the examination of Richard Bently, Cashier of the Bank, to-wit:

''Q. Where was this note when he came to the bank? A. In his box.

''Q. In whose name was that box? A. It was joint box of his and his wife—both had access to it.

''Q. What did you do with this note? A. I stamped it with the rubber stamp and the name 'Emma A. Dickson' was written by me, and Mr. Dickson signed it in my presence.

''Q. Did he tell you the purpose of putting that endorsement on that note at that time?

''MR. HAMLIN: We object.

''THE COURT: Sustained.

''Q. What became of that note after he left? A. He placed it in his box and the box was put away.

''Q. Did that not remain there until Mrs. Dickson later got it? A. So far as I know it did.''

The witness later testified as follows:

''A. He called and asked me to place the endorsement on the note to his wife, and I placed the endorsement on the note to his wife, and he signed the note there.

''Q. And the signature there is the signature of Willis G. Dickson and was made in your presence? A. Yes, sir, made in my presence.''

One Eldon Maddox, son of respondent and step-son of Willis G. Dickson, was called as a witness and testified as to a trip he took with his father to Glasgow, Missouri, as he thought was last of June, 1928. The testimony of Maddox is shown in narrative form as follows:

"Mr. Dickson went in. . That after Willis G. Dickson left the bank and had started home with witness, he said that he, Eldon Maddox, had a conversation with Willis G. Dickson and that Mr. Dickson told him that he, Wilis G. Dickson, said that he had indorsed the three thousand dollar note that he had on Roy Dickson's farm in Carroll County over to witness' mother, Emma Dickson, and *left it in the bank vault with her papers*. Witness further stated that after he had gotten home, he heard Mr. Dickson and his mother talking and he heard Mr. Dickson say that he has fixed that note over to her." (Italics ours.)

The law as cited and quoted being considered, we conclude that the evidence, as set forth above, clearly presents an issue of fact on the question of perfected gift *inter vivos*.

Judgment affirmed. All concur.