ALBERT STEIN and CHARLOTTE ANNE STEIN, by her next friend, RUBY STEIN, Plaintiffs, Respondents, v. MERCANTILE HOME BANK & TRUST COMPANY, a Corporation, Executor of the Estate of Emil Pinkert, Appellant, FRED STEIN, WILLIAM STEIN, MINNIE STEIN, EMIL GOTTSCHALK, MAX GOTTSCHALK, ANNA LOCHMAN, and ANNA LOCHMAN, Executrix of the Estate of Emil Pinkert, Defendants, Respondents.—148 S. W. (2d) 570.

Division One, March 13, 1941.

*Harvey E. Hartz* for Mercantile Home Bank & Trust Co., executor of Emil Pinkert's estate.

734

*John C. Nipp* for plaintiffs.

*Ira B. Burns* for Fred Stein, William Stein, Minnie Stein, Emil Gottschalk and Max Gottschalk.

*James E. Burk* and *Madden, Freeman & Madden* for Anna Lochman.

DOUGLAS, J.—This is a suit to establish a trust in moneys and bonds instituted in the Circuit Court of Jackson County by the person claiming to be trustee, who is in possession of such personal property. His infant daughter who is a beneficiary is also a party plaintiff. The defendants include the other beneficiaries and the executors of the estate of the donor of the trust.

The pleadings allege that on January 19, 1939, one Emil Pinkert of Kansas City gave the plaintiff, Albert Stein of Wichita, a nephew by marriage, government bonds of the face value of $20,500 and $3,900 in cash. One one-thousand-dollar bond was to be held by Stein in trust for his infant daughter, Charlotte Anne, to be used for her education. The remaining bonds and cash were to be held by Stein until after Pinkert's death and then distributed equally among Pinkert's six nephews and nieces. In addition to the above Pinkert also gave Stein $2,475 to be used to pay the debts of another relative of Pinkert's named Max Gottschalk who also resided in Wichita. Should any balance remain after these debts were settled, it was to be paid to Gottschalk in monthly installments. The bonds and cash were delivered into Stein's possession and control and were held by him from such date.

Emil Pinkert died testate on April 11, 1939. He appointed the Mercantile Home Bank & Trust Company of Kansas City as one of the executors of his will. The trust company is the only real adversary party. By its answer and counterclaim it denied that any such gift was made. It charges that Stein and one of the defendants took the personal property from Pinkert's safe after Pinkert's death and without authority, and prays that such property be returned to the estate. It also charges that the plaintiff and his two brothers Fred and William Stein, defendants, were indebted to Pinkert in the amount of $11,000 and asks judgment for that amount.

The chancellor found for plaintiffs and entered a decree upholding the gifts, establishing the trusts and ordering distribution to the beneficiaries. He also found for the Stein brothers on the $11,000 claim. The trust company alone has appealed.

The evidence shows that Emil Pinkert had come to this country from Germany and for fifty years had resided in Kansas City. He had been in the fur business and was so successful that he retired about 1909 and devoted his time attending to his real estate and investments. He was an agreeable but quiet and modest man of character. He had strong sentiment for his relatives. He was a charitable and generous man. From time to time he sent gifts to his relatives in Germany and on one occasion sent a sum of money to the mayor of his native town there. He provided the funds for a visit of a nephew from Germany and gave him money to apply on a new home which the nephew was building there. He was generous with his and his wife's relatives in this country and from time to time made gifts

of money to them. He saw much of his wife's nieces and nephews for whom it is claimed he established the trust. He made many presents to them. He was pleased with the success of his nephews in the fur business in Wichita. He was a frequent contributor to charities. By his will he left one-fourth of his estate to charity and divided the remainder among his heirs and the parties here. He was a widower and lived with a niece and her husband. He was stricken on April 1, 1939, some forty days after the gift in trust was made, and died on April 11, at the age of eighty-one.

The evidence seems to indicate that the occasion for the visit of Albert Stein on January 19, 1939, with his uncle in Kansas City was the financial trouble of Max Gottschalk. Pinkert wanted to save Gottschalk from going to the wall and provided money to pay Gottschalk's debts in order to keep him out of bankruptcy. Appellant admits that the $2,275 was given to Stein for this purpose but contends that the balance remaining after the payment of debts, $851.29, should be returned to the estate. However, we find the testimony that such excess was to be paid to Gottschalk is sufficient and undenied.

The testimony supporting the gift in trust of the other funds is characterized by appellant as being false and untrue. Appellant has attempted to refute such testimony by evidence which denies it only inferentially. For instance, it was related on the stand that Albert Stein had stated that "there was some money and bonds out there in the safe which he was going to divide as his uncle told him to." The witness said that he understood this to mean in Pinkert's safe. in his home in Kansas City. Two witnesses to this conversation were produced who testified that Stein said "there was some stuff in the safe that he (Stein) wanted to distribute." In another instance there was testimony for appellant that one of plaintiffs' witnesses was not present at a conversation she related, but this testimony was met by the statement that appellant's witness was the one not present. On the other hand, there was direct, positive and convincing evidence adduced on behalf of plaintiffs that the money and bonds were turned over to Albert Stein, whom Pinkert regarded as a son, on the date claimed for the purposes described. Stein returned to Wichita on the evening of that date and there is evidence that on the next morning the cash and bonds were seen in his possession by his wife, by one of his employees and by an employee of the bond department of the bank where he did business.

It would be of no avail to discuss further the evidence of either party. We have fully reviewed the evidence and conclude that it presents clearly a situation where we properly defer to the finding of the chancellor, because the evidence as presented to him was parol and conflicting. He observed the witnesses, heard the testimony and determined its weight and credibility. Our right to so defer to the chancellor's findings under such circumstances has

been ruled so many times as to become an authorized dogma and needs no citation of authorities in support.

We adopt the chancellor's findings with the rule in mind which requires an extraordinary degree of proof to establish a parol trust and a gift *inter vivos,* as well, especially where such gift is not asserted until after the death of the alleged donor. "Clear, cogent and convincing" describes the standard which the testimony must meet to such satisfaction so "as to leave no room for a reasonable doubt in the mind of the chancellor." [In re Franz' Estate, 344 Mo. 510, 127 S. W. (2d) 401; Ambruster v. Ambruster, 326 Mo. 51, 31 S. W. (2d) 28; Harding v. Trust Co., 276 Mo. 136, 207 S. W. 68; Northrip v. Burge, 255 Mo. 641, 164 S. W. 584; Foley v. Harrison, 233 Mo. 460 at 584, 136 S. W. 354.]

Appellant complains that the chancellor admitted testimony of persons who were disqualified as witnesses under Section 1887, R. S. 1939, Mo. Stat. Ann., sec. 1723, p. 3994, because of the death of Pinkert. However, the chancellor has stricken from the record the testimony of all witnesses beneficially interested under the trust and thereby has cured any error which may have resulted from permitting such witnesses to testify. Furthermore, in an equity case this court reaches its judgment on the competent evidence in the record. [Blackiston v. Russell, 328 Mo. 1164, 44 S. W. (2d) 22.] We have held above that there was sufficient admissible evidence of the proper character to sustain the chancellor.

Appellant also complains about the refusal of the chancellor to admit an exhibit in evidence. This exhibit was a memorandum in the handwriting of deceased which was offered to prove that deceased had in his safe on January 27, 1939, the subject matter of the gift which was said to have been transferred on January 19. Although the memorandum was dated January 27, 1937, two years earlier, appellant argues robustly that such date was a mistake because from the items set out in the memorandum it could refer only to January 27, 1939. At the best this memorandum is indefinite as to its date and the chancellor evidently found it was not contemporaneous with the transaction plaintiffs seek to establish. The fact that this memorandum was in a check book gives it no added weight. [See Nall v. Brennan, 324 Mo. 565, 23 S. W. (2d) 1053.] The chancellor committed no error in excluding the exhibit.

Finally, appellant complains about the dismissal of its counterclaim for $11,000 against Stein Brothers. The court found that this sum was not owed by the Stein brothers as individuals but was involved in a transaction with their corporation. The corporation is not a party to this action and consequently the court has no jurisdiction over it. Therefore the argument that where a court of equity once acquires jurisdiction of a cause it will do full and complete justice between the parties is untenable.

The judgment is affirmed. All concur.