J. V. LEWIS v. EDITH G. LEWIS, Appellant.—No. 39359—189 S. W. (2d) 557.

Division Two, September 4, 1945.

Motion for Rehearing or to Transfer to Banc Overruled, October 1, 1945.

*John Marley* and *Trusty & Pugh* for appellant.

418

*David M. Proctor* and *William I. Potter* for respondent.

BARRETT, C.—In this action the wife, Edith G. Lewis, appeals from a judgment and decree in favor of her husband, J. V. Lewis. The husband had transferred certain personal property to his wife and the decree sets aside and cancels the transfers.

The essential facts which furnish the background for the problems involved are these:

J. V. and Edith Lewis were married and moved to Kansas City in 1923. She is now forty-four and he is forty-seven. They have two children, a girl ten and a boy eight. Until 1930 he was employed by the Kansas City Power & Light Company as a right-of-way engineer. Since 1930 he has been employed by Kansas City and is now Superintendent of Parks. From his salary and investments and from money that came to him, during the twenty years they lived together, real and personal property was acquired and money accumulated. There was a house at 5241 Brookwood Road, valued at $6500.00. The title to that property was in their joint names as tenants by the entirety. There were four insurance policies on his life in the New York Life Insurance Company. There were two $10,000.00 policies in which the children were named as beneficiaries. One of these was a paid up policy. There were two paid up policies, one for $1000.00 and one for $2000.00, in which the wife was the beneficiary. There were several certificates of stock, chiefly in James R. Kearney Corporation

(1247 shares valued at $10,000.00) and United Light and Railways (valued at $2000.00). The greater part of the certificates were in the names of "James V. Lewis and Edith G. Lewis" but some of them were in his name alone. There was $50,000.00 in cash in two envelopes, each containing $25,000.00. On March 24, 1942, the husband placed the envelopes containing the cash in a safety deposit box in the Mercantile Home Bank and Trust Company and gave Mrs. Lewis a key to the box.

In 1942 they began having serious marital difficulties and on June 6th Mrs. Lewis took the two envelopes containing the $50,000.00 from the lock box and subsequently put them in her own lock box in another bank. On July 2nd Mr. Lewis was served with a divorce petition. Thereafter, for the next five or six weeks, there were numerous conferences between Lewis, his wife and her attorney, Mr. Pugh. On July 10, 1942, in Mr. Pugh's office, Mr. Lewis signed requests to the New York Life Insurance Company to change the beneficiary provisions in all his life insurance policies so as to make Mrs. Lewis the irrevocable beneficiary of all of them. On August 5th he assigned the policies to her. The policies were sent to the home office of the company in October; Mrs. Lewis was made the irrevocable beneficiary of all of them, and they are now in her possession. About August 1st, 1942, he assigned all the certificates of stock to his wife (although he claims the assignments were in blank) and subsequently, January 1944, all the stock was transferred on the books of the companies to Mrs. Lewis and she now has the stock. By August the 8th they had decided on a vacation trip and a reconciliation and so informed Mr. Pugh. On that day they went to Mrs. Lewis' safety deposit box and took $1000.00 from one of the envelopes for the vacation trip. On that occasion he says that he surreptitiously took one of the envelopes from the box, the only one which then contained $25,000.00. He intended to take both of them but she protested and threatened to call the bank's employees. The other envelope had been opened and there was $17,000.00 in it after the $1000.00 was removed. She says that they then and there agreed to and did divide the money and she has whatever sum is left of the $17,000.00. Sometime after they returned from the two or three weeks vacation trip to Canada, in September or October, he purchased a house at 6516 Summit for $17,500.00. The title to that property is in their joint names as tenants by the entirety and is subject to an indebtedness of about $9,300.00. After returning from the vacation trip they resumed living together but the divorce suit was not dismissed. In September 1943 the divorce suit was dismissed and Mr. Lewis was served with a second divorce petition and notified by Mr. Pugh that it would be best for him to leave home. The latter suit was dismissed on March

4, 1944, and Mrs. Lewis testified that she did not intend to prosecute a divorce suit, at least for the present.

In March 1944 the husband instituted this suit against his wife. In his second amended petition he alleged that after the divorce suit was filed in July 1942, she announced that she intended to dismiss it and that they entered into negotiations for the purpose and with the view of adjusting and settling their marital difficulties. He alleged that he contended and maintained throughout the conferences and negotiations that he would not adjust or settle their differences, including their property rights, "unless an adequate provision was made for the financial protection and security of his said minor children." He alleged that it was finally agreed that the children could be protected by the establishment of a trust for their benefit, with the Commerce Trust Company as trustee. He stated that it was for this purpose that he assigned, transferred and turned over to his wife the insurance policies and the certificates of stock. He alleged that the transfers were to be effectual "only if a settlement was arrived at between plaintiff and defendant by which the financial security of his children was to be undertaken" and that the policies of insurance and certificates of stock were to be held and used for that purpose only. He stated that after the absolute transfers had been made to his wife she refused to carry out that part of the agreement, claimed the property as her own, and that they never did reach an agreement adjusting their marital difficulties. He alleged that there was a failure of consideration for the transfers, that they were procured by fraud and false representations and he asked to have the transfers canceled and set aside.

At the close of the husband's evidence the court sustained the wife's motion to strike from the petition all allegations with reference to the real estate, the title to which was held by them as tenants by the entirety. Frost v. Frost, 200 Mo. 474, 483, 98 S. W. 527. In its decree the court found that Mr. Lewis had intended to create a tenancy by the entirety in the $50,000.00 cash but that he had legally failed to effectuate that purpose but the court also found that he was estopped to claim that part of the fund, $17,000.00, which Mrs. Lewis admits she received. The husband did not appeal from the court's decree in so far as it may have been adverse to him or his claims and that eliminates from our consideration all the property except the insurance policies and the certificates of stock. Smith v. Holdoway Const. Co., 344 Mo. 862, 878, 129 S. W. (2d) 894, 993; Moore v. Hoffman, 327 Mo. 852, 867, 39 S. W. (2d) 339, 345.

As to the certificates of stock and the insurance policies the court found that the parties were attempting to settle their marital difficulties and effectuate a property settlement even though Mrs. Lewis had determined to not prosecute her first action for divorce

and later the second action. The court found that during the course of their negotiations Mr. Lewis was induced to assign the policies to Mrs. Lewis, make her the irrevocable beneficiary in all of them and to assign her the certificates of stock for the purpose of settling their property rights but that the negotiations were never completed and they were never agreed on the terms of a settlement. That the policies and certificates were delivered "as a prliminary step in the consummation of the agreement they were undertaking to make, and, as there was a failure of the parties to reach a complete agreement, there was an absence of consideration to support the claim of defendant to said insurance policies and certificates of stock delivered into her custody." That her claim to them as a gift "was unsupported by the weight of the evidence" and there was no intention on the part of the husband to make a voluntary gift of them to her and thus divest his children of financial security and himself of all his property. The court further found that the wife was in bad faith and guilty of fraud in obtaining possession of and retaining the policies and the certificates of stock. Accordingly the court set aside and canceled the transfers.

It is true, from the transfer and delivery by Mr. Lewis of the insurance policies and the stock certificates to his wife while they were living together as husband and wife, that there is a presumption the transfers were intended as an advancement to her, a settlement upon her or a gift to her. Keener v. Williams, 307 Mo. 682, 706, 271 S. W. 489, 496; McKenzie Carpet Co. v. Leffler, 192 Mo. App. 608, 184 S. W. 905. We may go further in this case and say, had the court accepted Mrs. Lewis' version of the circumstances of the transfers, that the court could have found that there was a complete and valid voluntary gift. The court could have found as she claimed, that she caught him in an act of infidelity and that part of the transfers were for the purpose of placating her. Or, the court could have found, while they were considering their marital difficulties, that he decided he wanted her to have the policies and the stock and voluntarily gave them to her. Chapman v. McIlwrath, 77 Mo. 38; Schooler v. Schooler, 18 Mo. App. 69; Aylor v. Aylor, 184 Mo. App. 607, 170 S. W. 704. If the court had been so persuaded by her evidence and had found that there was in fact a completed gift the husband could not subsequently revoke the gift or turn it into a resulting trust. Hernandez v. Prieto, 349 Mo. 658, 662, 162 S. W. (2d) 829, 831; Gillespie v. Gillespie (Mo.), 289 S. W. 579, 582; Costello v. Brune, 217 Mo. App. 587, 591, 272 S. W. 1056, 1057. "If the gift was complete, the fact that defendant failed in what plaintiff hoped and expected of him, could not alter the gift." Blatz v. Lester, 54 Mo. App. 283, 285.

But the presumption of a gift, arising from the relationship and the circumstances, is a rebuttable one "and if all the facts and

circumstances show that no such settlement was intended, then the presumption of a settlement in favor of the wife is rebutted, and she will hold the property in trust for her husband, . . . just as if she were a third party.'' Thierry v. Thierry, 298 Mo. 25, 45, 249 S. W. 946, 952. The mere fact that Mrs. Lewis is the payee, assignee or transferee named in the documents of transfer is not conclusive. Milligan v. Bing, 341 Mo. 648, 108 S. W. (2d) 108; Light v. Graham (Mo. App.), 199 S. W. 570. Neither is the mere fact of her possession of the property conclusive of a gift. 26 Am. Jur., Sec. 94, p. 721; 41 C. J. S., Sec. 151, p. 624. Whether there was a gift is a question of fact (Dickson v. Dickson, 231 Mo. App. 515, 518, 101 S. W. (2d) 774, 775; Strothers v. McFarland (Mo. App.), 194 S. W. 881) and, as is well known, whether the fact was accomplished or established two essentials must be made to appear, *delivery* of the property by the donor to the donee with the *intention* on the part of the donor to part with his title and dominion over the subject of the gift. Thomas v. Thomas, 107 Mo. 459, 463, 18 S. W. 27. The question is whether, under all the facts and circumstances connected with the transaction, there was delivery and the intention to transfer title absolutely to the wife. Hall v. Hall, 107 Mo. 101, 110, 17 S. W. 811; Cartall v. St. Louis Union Trust Co., 348 Mo. 372, 153 S. W. (2d) 370; 26 Am. Jur., Sec. 106, p. 728. Regardless of the unambiguous nature of the transfers and because of the conflicting and contradictory claims, the way was open for the admission of evidence to establish the intention with which the transfers were made. Darrier v. Darrier, 58 Mo. 222, 227.

The husband testified that he did not make a gift of any of this property to his wife. He contended that throughout ██ the negotiations his purpose was to protect the two minor children and to provide some financial security for their future, regardless of whether he and Mrs. Lewis were divorced or reconciled. He said that a trust for the children of the policies and the stock was suggested and agreed to by him and by Mrs. Lewis. He testified that the policies and stock certificates were assigned, transferred and delivered to Mrs. Lewis solely for the purpose and upon condition that she create and establish a trust for the children with them. He says that she agreed to do so and that the Commerce Trust Company was selected as a proper institution for that purpose. There is some corroboration of the husband's version of the transaction in the circumstances and in her evidence. He says that there were many tentative agreements during the course of their conferences, none of which were carried out. But the draft of one tentative agreement which Mrs. Lewis' attorney prepared provided that the stock was to be divided in value, that she was to have one-half of it and the other half was ''to be deposited with the Commerce Trust Company as Trustee for the benefit of his

minor children under a trust agreement to be drawn by the Commerce Trust Company . . ." There was a similar provision with reference to the two $10,000.00 life insurance policies. Mrs. Lewis says that the trust talked about was one she was to create by her own will, providing for the children after her death. But, according to the husband's testimony there were conditions upon the transfers and it follows: if the conditions were not met or complied with, he had a right to revoke them. Franklin v. Moss (Mo.), 101 S. W. (2d) 711, 714; Platt v. Huegel, 326 Mo. 776, 785, 32 S. W. (2d) 605, Steines v. Steines, 338 Mo. 335, 89 S. W. (2d) 52; Restatement, Restitution, Sec. 58. "There is no completed gift where there is a condition attached to its delivery and that condition has been unperformed." Hendrix v. Corning, 201 Mo. App. 555, 558, 214 S. W. 253, 255. As the court found the facts, the transfers were not intended or delivered as a gift, "the ordinary implication of equity prevailed of a trust resulting", and Mrs. Lewis holds the policies and the certificates of stock for the benefit of her husband. Seibold v. Christman, 7 Mo. App. 254, 257; Price v. Kane, 112 Mo. 412, 415, 20 S. W. 609 and the following annotations: 35 A. L. R. 280, 311; 45 A. L. R. 851, 855; 80 A. L. R. 195, 205; 129 A. L. R. 689, 696.

This, in our view, disposes of the substantial merits of the case and it is not necessary to further characterize the acts or conduct of the parties. The court doubtless considered any misconduct on the part of the husband, in so far as it reflected on his credibility, when the court weighed the evidence. If it is insisted that the trial court's finding as to fraud is not supported by the evidence see Steines v. Steines, supra; Platt v. Huegel, supra; and Cram v. Cram, 262 Mass. 509, 160 N. E. 337. There is not the slightest evidence that Mrs. Lewis' attorney was guilty of fraud or any other misconduct. It is true that many months passed before the husband filed this suit and insisted on the enforcement of his rights. He claims, however, that throughout the months he insisted on the return of the property. It could be noted that Mrs. Lewis did not transfer the stock on the books of the companies to herself until January-February 1944. But, in any event, delay alone in the circumstances of this case does not establish laches. There was and can be no injury to either of the parties from any delay in the assertion of rights and that is one of the essential prerequisites to laches. Oetting v. Green, 350 Mo. l. c. 464, 166 S. W. (2d) l. c. 551; Schwind v. O'Halloran, 346 Mo. 486, 496, 142 S. W. (2d) 55, 60. We have set forth the substance of the husband's petition and unquestionably it states a cause of action. Morris v. Hanssen, 336 Mo. 169, 177, 78 S. W. (2d) 87, 91; Abramsky v. Abramsky, 261 Mo. 117, 168 S. W. 1178.

The judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.