In the Matter of the Estate of E. J. Harlow, Deceased, G. W. Harlow, Administrator of the Estate of E. J. Harlow, Deceased, v. Harold Harlow, 192 S. W. (2d) 5.

Kansas City Court of Appeals.   December 3, 1945.

*Andrew Field* and *Chas. D. Brandon* for appellant.

*H. J. Bain* of counsel.

*Thomas J. Layson* and *L. B. Gillihan* for respondent.

DEW, J.—This proceeding was begun in the Probate Court of Daviess County, Missouri, by the filing of the affidavit of G. W. Harlow, Administrator of the Estate of E. J. Harlow, deceased, for discovery of assets, wherein respondent (defendant) was charged

612

with wrongfully withholding certain goods and chattels of the said deceased, to-wit: "Farmall Tractor, cultivator, plow, disk, power mower, barrels, buckets, tractor chains and funnels". The fact that the value of the property concerned is less than $7500 is not disputed.

Citation to the defendant was issued and duly served. Interrogatories were thereafter filed. The Judge of the Probate Court, having disqualified himself to hear the case, transferred it to the Circuit Court of Daviess County, wherein the cause was tried before a jury, resulting in a verdict for the defendant on June 3, 1943. Motion for new trial and motion in arrest of judgment were duly filed and were sustained by the court on the ground "that there is no evidence of delivery of articles claimed as subject of gift." On change of venue, the cause was thereupon transferred by agreement to the Circuit Court of Grundy County, Missouri, where the cause was again tried on November 29th and 30th, 1944, resulting in a verdict and judgment for the defendant. This judgment was by the court corrected on motion to eliminate certain items of "funnels" and "buckets". Thereafter motion for reversal of the judgment and motion for new trial were denied, and plaintiff (appellant) has appealed to this court.

By defendant's answers to the interrogatories he admitted possession of the personal property described, and alleged ownership in the defendant; alleged that said property had formerly been owned by the deceased E. J. Harlow, and that the defendant took possession of same on January 27, 1943, when it was located on the farm where the deceased resided. The answer futher alleged that the defendant was employed by the deceased in February, 1942, and that in April, following, he went with the deceased to look at a tractor then owned by a man by the name of Gilbert, from whom the deceased bought the tractor—

"He gave the tractor and equipment to me under the following circumstances. On January 27th, 1943, I was at the barn on the home place of E. J. Harlow, doing the chores when E. J. Harlow came into the barn (handing me a paper writing). I took the paper and unfolded it and saw that it read as follows:

" 'Harold get tractor, plow, cultiv-mower, and disk gas and oil barrel.

"E. J. Harlow' ".

The answer further stated that the defendant thanked the deceased and put the paper in his pocket and still has it, and thereupon took possession of said tractor and equipment and has since had possession of the same since January 27, 1943. The answer further contained a refusal to turn the property over to the estate of E. J. Harlow, or to anyone else, for the reason that the defendant is the owner thereof. The answer is subscribed and sworn to.

The reply was a general denial.

It was shown by the evidence that E. J. Harlow, deceased, lived on a farm of several hundred acres owned by him in Daviess County; that his wife had died about 1930; that his daughter, Mrs. Virgie Everly, with her husband and son, moved into the deceased's home and lived with him until the latter's death February 5, 1943; that the deceased was 83 years old at the time of his death, but was active in looking after his farm and affairs until the day he died. In addition to his said daughter, deceased had two sons G. W. Harlow (plaintiff administrator), living in Hamilton, Missouri, eight miles distant, and another son Earl Harlow, who lived on part of deceased's farm. The defendant Harold Harlow is the son of Earl Harlow; is about 30 years old and married.

The evidence further discloses that in February, 1942, the defendant was employed by the deceased as a farm hand at $10 a week, and was to remain in such employ for a year. At the time of his employment the defendant and his wife moved into and occupied a tenant house on the same farm occupied by his said grandfather, and about one-half mile from the decedent's dwelling house.

In his own behalf, defendant testified that the spring season of 1942 was wet, and that they were unable to get much work done; that neighbors with tractors were able to do their spring work, and the deceased stated that he was going to buy a tractor. He testified that he and his grandfather (deceased) "looked places" for a tractor to purchase and finally deceased bought the tractor and some of the equipment in question from Marvin Gilbert at Hamilton, Missouri, for $700; bought the mowing machine from Floyd Andrews at Gallatin, Missouri, for $187, and that the disk was already owned by the deceased.

The defendant, at one point in his testimony was asked if he had a conversation with his grandfather shortly before the latter's death regarding the tractor and equipment. His answer was: "Yes, he come out to the barn early one morning when I was doing the feeding and he brought me a little slip of paper, handed it to me and he says, 'Harold, you know that tractor is yours', but he says, 'this will get it for you' ". He thereupon identified defendant's Exhibit "A", and said that was the paper handed to him at the time, and that the signature and the whole instrument was in deceased's handwriting.

Defendant's Exhibit "A" is a yellow colored blank check on the Bank of Gallatin, on the reverse side of which appears in pencil the following:

"Harold get tractor, plow, cultiv-mower, and disk gas and oil barrel".

Below the above appears likewise in pencil handwriting, the name "E. J. Harlow".

Defendant testified that beginning in November, 1942, he talked with his grandfather from time to time about leaving him and in those conversations his grandfather told him the tractor "is yours". Again in his testimony he quoted his grandfather as having said, when the paper was handed to the defendant: "Harold, I have given you this tractor and this paper will get it for you". He stated that he had not told his uncle, the administrator (plaintiff), about the transaction, nor did he mention it to anyone else before the death of his grandfather because his grandfather had asked him to be still about it until defendant "got away from there". Again he testified:

"He (deceased) had promised it to me all summer and it was the 27th day of January he walked in the driveway of the barn and come in there and said, we was talking about the weather, he was always talking about the weather, it was a splendid day for January, and he said 'Harold, I am giving you that tractor and equipment'. I was shocked and I thanked him a thousand times, and he says 'Here, this will get it for you'. And he gave me that piece of paper".

He said he had been told before by his grandfather that the tractor was his. He stated that at the time in question, when the paper was handed him, part of the tractor and equipment was in the orchard, and part in the coal shed; that they did not talk about taking it to defendant's home; that some times it was there when they were using it there; that he took possession of it after his grandfather died and on the day that plaitniff was appointed administrator. On cross-examination defendant was asked regarding his deposition:

"Q. 'Didn't you tell your Uncle Willard and Aunt Virgie both that your grandfather said you could have it when he got through with it? And, you answered 'He was through with it when he give it to me, wasn't he?'

"Q. 'Well, now, that doesn't answer my question'. A. 'That is what he told me, "When I get through with it, it is yours." If he was still alive, he would still have use for it. He told me all through the summer I could have it when I went away from there'. Did you make that answer to that question? A. I did. Q. Then what he did say was 'When I get through with it it is yours?' A. That's what it says there. Q. He was not purporting to give it to you, then, it was when he got through with it, just what you said there? A. That's right, isn't it?" "Q. This is what you said in the deposition? A. Yes, sir. Q. Is it true? A. It is what I said then. Q. What you said then is what your grandfather said, 'When I get through with it it is yours?' A. Did I answer it that way there?"

In explaining this, defendant said: "I knew it was mine, but he hadn't give me a piece of paper written out and told me to take it away from there with me". Again he testified that deceased had told him "along in the winter" that the tractor was defendant's

property, and told him that since defendant was starting out for himself, the tractor would help him out.

Again he stated in his deposition that the agreement he had with his grandfather was that after defendant left, defendant would come back and do whatever work (presumably with the tractor) that his grandfather wanted him to do, and that was the consideration for the gift.

Pressed for a definite answer as to when he claimed the gift of the tractor was made, he stated that it was given to him when it was bought, but that on January 27th his grandfather gave him the paper stating it was defendant's property.

There was also evidence that shortly before the death of the deceased, defendant had rented a farm in Caldwell County of 100 acres, and had bought a team of horses.

Other than defendant's counsel here of record, defendant talked with two other lawyers about the matter, one of whom is present counsel for the appellant, and, over the repeated objection of defendant, they were permitted to testify that he told them when the paper was handed to the defendant, the deceased said: "I want you to have this tractor when I am through with it". One of the lawyers testified he advised defendant that the thransaction was neither a gift nor a legal bequest. Neither lawyer was paid a fee for the advice. In rebuttal defendant admitted having had these conferences with the attorneys, but he denied making the statement quoted. He testified that the lawyer mentioned, who is now of counsel for appellant, said: "It is a gift and they can't beat you out of a gift".

Mrs. Everly, daughter of the deceased, testified that a day or two after her father's funeral, the defendant showed her the paper (Defendant's Exh. "A") and she asked him what her father had said when he gave the defendant the paper; that defendant told her "that was the paper his grandfather gave him and said his grandfather told him he wanted him to have the tractor and 'this will get it for you when the time comes' ". She also testified that in her opinion no part of Exhibit "A" was in the handwriting of her father. Mrs. Everly's testimony was verified by her son Jack Everly, who testified he was present at the time of the conversation between his mother, Mrs. Everly, and the defendant.

The plaintiff testified to a conversation with the defendant about the tractor after plaintiff's appointment as administrator, and said that the defendant told the plaintiff that his grandfather had said he defendant could have the tractor when he (deceased) got through with it.

For the purpose of establishing whether or not the paper (Defenant's Exh. "A") was written or signed by the deceased, various checks made out by the defendant and signed by the deceased in payment of defendant's wages were introduced, together with one check

written entirely by the eceased, and an account book kept by the deceased wherein, on page 70, appears an undisputed entry of the deceased in his handwriting. Many witnesses, expert and lay, took the stand and testified as to whether Exhibit ''A'' was in the same handwriting as the admitted handwriting in the other exhibits referred to, and their opinions were conflicting.

Various implement dealers testified that the deceased and the defendant called on them in regard to purchasing a tractor and equipment, and that on such occasions the deceased stated that he was getting the tractor and equipment for the defendant, his grandson.

There was testimony that after the purchase of the tractor and equipment the defendant used it for the deceased and in several instances away from the farm of deceased, but for which defendant received only his wages from the deceased. There was also testimony that shortly before his death the deceased gave to the defendant a gilt, which defendant promptly removed to the premises where defendant was living. He stated that the immediate removal of the gilt was desired by the deceased in order that it might not get in the way of the removal of the remaining hogs. There was conflicting evidence as to friendly relations between the deceased and defendant at the time of and for some time before the delivery of the paper (Defendant's Exh. ''A''), defendant's evidence tending to show that the deceased received kindly the defendant's announcement that he was about to leave and start up for himself, expressing a desire to help him out, while other testimony was that the deceased was highly displeased and deplored the necessity of having to find other help, and had also complained that defendant, in making out checks for his wages for decedent's signature, had not deducted for certain time off.

Plaintiff's witness, Lawrence Colson, testified that he had answered the deceased's advertisement in the paper for a farm hand and had gone to see the deceased a few nights prior to the latter's death, and that it was agreed that witness was to start work for deceased as soon as the defendant left. Plaintiff offered to prove by this witness that on that occasion decedent asked witness if he could operate a tractor, and told him that he would have one there to operate. The court denied this offer of proof.

A similar offer of proof was made by the plaintiff through Mrs. Lawrence Colson to verify such declarations, and also through Mrs. Virgie Everly who, plaintiff claimed, would testify that she was also present and heard the declarations. Plaintiff also offered to prove through one Paul Mays that in a conversation with the deceased about taking the defendant's job, the deceased asked if he could run a tractor, and said that there would be one for him to run, and he would have to use it if he took the job. These offers were likewise denied by the court. Over the objection of the plaintiff (appellant), the defendant was permitted to introduce in evidence the inventory and appraise-

ment in the Probate Court in connection with the administration of the estate of the deceased. The inventory and appraisement showed a total estate, real and personal, of $27,528.25.

At the request of the plaintiff, the court gave, among other instructions for plaintiff, Instructions 6, 7, 8, 9, 11, 12, and 13. By Instruction 6, the court instructed the jury, in substance, that to constitute a gift, it must have been completed in the lifetime of E. J. Harlow without any further action on his part or upon the part of defendant, or any contingency of debt, or otherwise, being needed to make the gift effective.

By Instruction 7, the court told the jury that if it found from the evidence that the deceased did not in his lifetime make a valid gift of the property in question to defendant, their verdict must be for the plaintiff.

By Instruction 8, the court told the jury that if they found from the evidence that defendant's Exhibit "A" was not signed by the deceased, or by his authority, then the jury might wholly disregard it and not consider the same in arriving at their verdict, and unless they found and believed from other evidence in the case that the deceased voluntarily, gratuitously and absolutely transferred the title of said property to the defendant, such transfer to become effective immediately, and was fully executed by delivery to and acceptance by the defendant on or before January 27, 1943, then they should find the defendant guilty of wrongfully withholding said property.

By Instruction 9, the jury were told that by the pleadings it is admitted that the defendant now has possession of the personal propty in question, and that the defendant should be found guilty of wrongfully withholding the same unless they found from the evidence that the deceased in his lifetime unconditionally gave and delivered possession thereof to the defendant to keep and hold as his own property without the said deceased having any further control thereof, and that before the jury could find such gift was made, they must find from the evidence that the deceased intended to and did part with all interest and title to the property in controversy, and that in making said gift, if it was made, it was mutually understood and agreed between deceased and defendant at the time it was the intention of the deceased at once to pass the title and possession of said property to the said defendant and that said defendant at the time so understood and accepted the same, and unless the jury so found, the jury should find the defendant guilty of withholding said property.

By Instruction 11, the jury were instructed that defendant's Exhibit "A" is not of itself sufficient evidence of the delivery of the property referred to in said instrument.

Plaintiff's Instruction 12 told the jury that the burden was on the defendant to prove the alleged gift by evidence that is clear, unequivocal and which convinces he jury beyond reasonable doubt of

its truthfulness, and unless the jury find from the evidence that the defendant has so proved the alleged gift, the verdict should be that defendant is guilty of withholding said property.

By plaintiff's Instruction 13, the jury were told that if they believed that defendant's Exhibit "A" was not signed by the deceased, or by his authority, then the same may be wholly disregarded and not considered in arriving at a verdict.

Plaintiff requested Instruction 1-A, by which the jury would be instructed that if they believed and found from the evidence that defendant did not seek to establish or make claim to the property in controversy until after the death of the deceased, then such purported gift, under the law, "is regarded with suspicion and must be proved by forceful, clear and conclusive testimony which convinces you beyond a reasonable doubt of its truthfulness". This latter instruction was refused by the court.

By defendant's Instruction D-A, the court instructed the jury that to constitute a valid gift *inter vivos*, there must be a voluntary, gratuitous and absolute transfer of the property from donor to donee, effective immediately, and fully executed by delivery to and acceptance by the donee, and that if the jury found and believed from the evidence that at any time on or before January 27, 1943, said E. J. Harlow (deceased) did so transfer the property in question to the defendant, and that said gift was immediately effective, and was fully executed by the delivery thereof to the defendant, and that said gift and delivery were accepted by the defendant, then the jury should find the defendant not guilty.

In defendant's said Instruction D-A, the words "or before" appear before the date of January 27, 1943, making that part of the instruction read: "If, therefore, you find and believe from the evidence that at any time on or before January 27, 1943, said E. J. Harlow did voluntarily and gratuitously and absolutely transfer the property", etc. Plaintiff objects to the words "or before" for the alleged reason that there was no testimony of any delivery of the property before January 27, 1943, and that defendant's answer alleged delivery on January 27, 1943. Plaintiff objects further to the same words, which he claims were inserted in his own Instruction 8 by the court, the objections being on the same grounds. We, however, do not find any record showing that the court made such insertion, nor do we find in the record any objections made to any alteration by the court in plaintiff's Instruction 8.

The verdict of the jury was unanimous and in the following words:

"We, the jury in the above entitled cause, find that defendant, Harold Harlow, is not concealing or wrongfully withholding the property in dispute from the Estate of E. J. Harlow, deceased".

Upon a hearing of the motion for a new trial, the court sustained the same as to one paragraph pertaining to part of the property

designated as "buckets" and "funnels", amended the judgment "so that plaintiff is to have judgment for the possession of the buckets and funnels", ordered judgment entered as so corrected, and thereupon overruled plaintiff's motion for new trial.

Appellant's first assignment of error is composed of eleven different specifications, most of them general in character, similar in form to motion for new trial or in arrest, but does contain his objections to the overruling of the peremptory instruction offered by him at the close of all the evidence, and the alleged failure of defendant to prove a complete gift *inter vivos*. Respondent construes the whole first assignment of error to be in effect, that the jury's verdict is not supported by sufficient evidence to establish a gift *inter vivos*. We shall consider that specification along with the matter of the peremptory instruction.

Certain principles of law applicable to gifts *inter vivos* must be kept particularly in mind in considering appellant's first assignment of error.

"The authorities hold there must be a delivery, actual or constructive, of the thing given, with intent to relinquish all dominion thereover by a donor to a donee to constitute an irrevocable gift *inter vivos,* the requirement of a delivery being particularly applicable to parol gifts. . . . In case of an actual delivery, was the delivery in consummation of the intention to give? If there be an intention to give but no actual delivery were the acts done a sufficient delivery to consummate the gift? . . . the time when the gift is first asserted also has a bearing on the issue of delivery. . . . 'Clear, cogent and convincing' describes the standard which the testimony must meet to such satisfaction so 'as to leave no room for a reasonable doubt in the mind of the chancellor' ". [Cartall v. St. Louis Union Trust Co., 348 Mo. 372, 383, 384, 153 S. W. (2d) 370.]

Less positive and unequivocal proof is required to show the delivery of a gift by a donor who bears a blood relation to the donee, than between parties not so related. [McBride v. Mercantile-Commerce Bank, 330 Mo. 259, 48 S. W. (2d) 922-927.] Ordinarily when the donee does not have possession, gifts claimed after death of the donor are looked upon with suspicion by the courts, and must be established by clear and convincing testimony. [In re Franz' Estate, 344 Mo. 510, 127 S. W. (2d) 401.]

Where the gift is evidenced by some writing of the donor which is delivered to the donee, physical delivery of the property is not requisite, especially if the donee is living at the time with the donor or already has possession, or if it is impracticable to make manual delivery, 38 C. J. S., pp. 802, 803.

"Whether there was a gift is a question of fact. [Dickson v. Dickson, 231 Mo. App. 513, 518, 101 S. W. (2d) 774, 775; Strother v.

McFarland (Mo. App.), 194 S. W. 881''. Lewis v. Lewis (Mo.), 189 S. W. (2d) 557, 560.]

The question is whether, under all the facts and circumstances connected with the transaction, there was a delivery and intention to transfer title to the alleged donee. [Lewis v. Lewis, *supra.*]

The jury in this case heard the evidence hereinbefore outlined and, under instructions properly confined within the principles above announced, found the facts against the plaintiff. Considering all the evidence in its most favorable light to the respondent as we are required to do in determining the matters of law presented in appellant's first assignment, we are of the opinion that there was ample evidence to support the jury's finding of a complete and legal gift *inter vivos*, and that no error was committed in the court's refusal of appellant's peremptory instruction at the close of all the evidence.

The appellant's second assignment of error is in two parts. He objects to the admission in evidence by the defendant of the inventory and appraisement of the deceased's estate which tended to show that the deceased, at the time of his death, had property, real and personal, in the amount of over $27,000. The defendant argues, in effect, that this was admissible to show the financial condition of the alleged donor and the greater likelihood of the gift claimed by the defendant. The plaintiff argues that the size of the estate did not tend to prove or disprove any issue in the case, and was prejudicial. Whether or not it was improper to admit the inventory and appraisal, we believe it did not materially effect the merits of the case in view of the other evidence in the case, unobjected to, as to the deceased's extensive farm, farm equipment, high bred horses, jacks and cattle. [Laws of Missouri, 1943, page 395, Sec. 140(b) ; 38 C. J. S., p. 868, Note 71; Thornton on Gifts, p. 220.]

The second part of appellant's second assignment of error is that the court erred in permitting three implement dealers, witnesses for the defendant, to testify to certain alleged declarations made by the deceased some months prior to January 27, 1943, the date deceased handed to the defendant Exhibit ''A'', offered as documentary evidence of the gift. These witnesses were allowed to testify that the deceased in the spring of 1942, when inquiring of them regarding a tractor to purchase, and before finally making the purchase that spring, told the witnesses, respectively, that he (deceased) was going to buy a tractor for the defendant. Defendant contends that the declarations referred to tended to corroborate defendant's proof and allegations of the gift and, being against the interest of the deceased, were admissible. Plaintiff argues that the purported declarations were made before any tractor had been purchased, did not refer to the tractor actually purchased, and that such a promise of a future gift is of no value and void. He further argues that the real construction to be placed upon these declarations is that the deceased

was buying a tractor for defendant to use on deceased's farm. Of course the construction of such declarations and the true meaning thereof were matters for the jury, if admissible.

If defendant's case rested solely on such declarations of the deceased of his intent to make a gift of the tractor to the defendant, his proof would be insufficient. But followed up, as is the case here, by evidence that the deceased did purchase a tractor within a matter of weeks after such alleged declarations, at which time of purchase he made similar declarations in reference to the machine bought, together with other evidence of the defendant as to the tractor's later location and use, and as to subsequent conversations between the defendant and deceased, together with the delivery by the deceased to the defendant of the written memorandum (Exhibit "A"), the declarations objected to tend to show the intent and purpose of the deceased to make a gift of the tractor to the defendant when purchased. The mere fact that the declarations were made before the purchase of any tractor would not make them inadmissible. [See Reynolds v. Hanson, 199 S. W. 279, and Strothers v. McFarland, 194 S. W. 881.] Nor do we believe that considering the time and other circumstances surrounding the occasion of the purported declarations, that they are any less admissible because not made pertaining to the particular tractor finally selected and purchased by the deceased so soon thereafter. The admissions were against the interest of the deceased and his estate, and are corroborative of the theory by a gift *inter vivos*.

Some of the declarations objected to by plaintiff were alleged to have been made after the purchase of the tractor by deceased, and after the defendant claims deceased had several times told him the tractor was defendant's property.

In 24 Am. Jur., p. 793, Sec. 121, it is stated:

"It is a well settled doctrine that subsequent declarations of a donor in the nature of admissions against interest are admissible in evidence as tending to show that he had given the property in question to the donee".

In Weller v. Collier, 199 S. W. 974, 975, the Supreme Court said:

"The rule is well established that declarations made by a person, since deceased, in explanation of a voluntary conveyance are admissible if made against his interest, but are inadmissible if made in favor of his interest or in the interest of his estate. . . . (citations). This rule applies to all cases where it is attempted to explain a conveyance or a gift of any kind by a parent, since deceased, to a child".

These declarations, likewise, tend to support the theory of a gift by the deceased to the defendant, and would be against the interest of the estate of the deceased. As such, under the authorities, they were admissible. The court did not err in admitting the same.

But appellant, in his third assignment, claims the court committed error in refusing to permit plaintiff's witnesses Lawrence Colson and Mrs. Colson to testify, according to an offer of proof, that a few nights before the death of deceased, deceased asked Colson if he could run a tractor, stating that deceased had the tractor in question for Colson to run, and that the latter would have to operate it if he accepted employment with deceased to take the place of defendant; and the further objection that the court denied proof offered through witness Mays to the effect that the deceased had also asked him if he could run a tractor, telling him that he would have the tractor in question for him to operate, and that if he took the defendant's place as a farm hand, it would be necessary for Mays to operate it. Mrs. Colson and two other witnesses were offered to verify these conversations. On objection, the court refused the proffered testimony. Plaintiff contends that this testimony was competent to show the state of mind of the deceased as inconsistent with the idea of a gift of the tractor and equipment and, further, to refute the testimony offered by defendant on the same proposition of a gift. It is evident that the declarations of the deceased referred to and offered by the plaintiff took place at different places and at different times and with different persons than those admitted in defendant's evidence, not a part of the same conversations, and it is further clear that the declarations offered by the plaintiff were not against the interest of the deceased or his estate, but clearly self-serving. Under the authorities above quoted, the declarations offered by the plaintiff and refused by the court were properly excluded.

But plaintiff contends further that inasmuch as the court admitted the declarations of the deceased to certain persons at certain times and places on the subject of the intent of the deceased to acquire the property in question to present to the defendant as a gift, that plaintiff would have the right to introduce declarations of the deceased referred to on the same subject, held at different times and places and with different persons. In other words, appellant argues that since declarations of the deceased corroborative of the gift were admitted, appellant should have the right to testimony of the declarations of the deceased tending to impeach the gift. On this subject 24 Am. Jur. 795, Sec. 124, states:

"The possibility of an exception to the general rule in cases where the main items of evidence offered by the donee to support his title to the property are the declarations of the donor has been recognized. Thus, where a donee, in order to prove the alleged gift, offers the declarations of the donor made subsequent to the alleged gift and in corrogoration thereof, it has been held that a vendee of the same same property from a donor may offer in evidence declarations of the latter made during the same time to the effect that the property was loaned and not given to the alleged donee. It has been held, how-

ever, that while the representative of a donor may properly prove any of the donor's statements that are part of those which are offered in evidence by the donee, he cannot show that the donor made, at another time, a contradictory declaration which was nothing more nor less than a declaration in his own favor, and that the admission in evidence of declarations of the donor against his interest corroborative of the gift does not justify the admission in evidence of his declarations tending to impeach the fact of the gift, when made at a different time''.

In Pursifull v. Pursifull, 257 S. W. 117, the declarations of a deceased had been admitted to show oral adoption of a child. The heirs of the deceased, over objection, introduced testimony of declarations of the deceased subsequently made to the effect that deceased had not adopted the child. The Supreme Court said, l. c. 118:

''The plaintiff was proving admissions against interest in an effort to show a contract to adopt, or make plaintiff an heir. The evidence admitted was a self-serving statement tending to destroy the admission. These self-serving statements were long after the date of contract, if one was made. They were incompetent, and the court erred in receiving that evidence, and in weighing it in the final determination of the case. 8 (citations) ''.

Under the foregoing authorities we find that the trial court did not err in refusing to admit testimony offered by the plaintiff as to the declarations of the deceased tending to impeach the theory of a gift.

The fourth assignment of error is that the court erred in refusing to give plaintiff's Instruction 1-A, which reads:

''The court instructs the jury that if you believe and find from the evidence in this case that the defendant Harold Harlow, did not seek to establish or make claim to the property mentioned in evidence until after the death of the said E. J. Harlow, such purported gift, under the law, is regarded with suspicion and must be proven by forceful, clear and conclusive testimony, which convinces you beyond a reasonable doubt of its truthfulness''.

It is true that the substance, and in part the exact language, of plaintiff's Instruction 1-A are found in the text of various decisions of the courts of this state relative to the character of evidence required to establish a gift when asserted after the death of the donor. [See In re Franz' Estate, *supra;* Cartall v. St. Louis Union Trust Company, *supra;* Cremer v. May, 223 Mo. App. 57, 8 S. W. (2d) 110, 115; Jones v. Falls, 101 Mo. App. 536, 538, 73 S. W. 903, 907.] However, the mere fact that language used in an instruction is to be found in the reasoning or conclusions of an appellate court decision does not make it proper language for an instruction to a jury. The plaintiff's Instruction 1-A, in substance, among other things, tells the jury that if the defendant asserted his claim for the first time after the death of the alleged doner, the claimed gift is regarded with suspicion. This

624

was improper language in an instruction to the triers of the facts and would have been prejudicial.

In Bresler v. Kansas City Public Service Company, 186 S. W. (2d) 524, l. c. 529, we said on a similar point:

"It has often been pointed out the danger in taking language from an opinion or opinions of the appellate courts and incorporating it in an instruction to a jury. There are many things said in opinions which would be improper if contained in an instruction to a jury. 64 C J. pp. 633, 665. See, also, Plank v. R. J. Brown Petroleum Company, 332 Mo. 1150, 61 S. W. (2d) 328, 332; Wolf v. Mallinckrodt Chemical Works, 336 Mo. 746, 81 S. W. (2d) 323; Knapp v. Hanley, 153 Mo. App. 169, 180, 132 S. W. 747".

Appellant's last assignment is its objection to the words "or before" in defendant's Instruction D-A, immediately before "January 27, 1943", making the same read in part: "If therefore, you find and believe from the evidence that at any time on or before January 27, 1943, said E. J. Harlow did voluntarily, gratuitously and absolutely transfer", etc. Plaintiff points out that in the defendant's answer and interrogatories filed in the cause, he claimed possession of the property in controversy since January 27, 1943; that he took possession thereof on that date, and that the deceased gave the property to him on that date. Plaintiff argues that the defendant now has no right to claim the gift "on or before" January 27, 1943. Except as to transactions beginning as far back as 1930, 1931, and 1932, evidence of conversations and transactions prior to January 27, 1943, between defendant and his grandfather pertaining to the property in question were entered into extensively by defendant without objection, and, in fact, both plaintiff and defendant went into the relationship of the parties and their transactions on the matters in question prior to January 27, 1943. There was subsantial evidence purporting to show the gift was in fact made prior to January 27, 1943. Nor was it fatal to defendant's case if, in fact, the gift or the delivery and consummation thereof took effect prior to the exact date pleaded in the answer.

In addition, plaintiff's Instruction 8, contained the same words "on or before" preceding the date January 27, 1943. While the appellant now asserts that in his Instruction 8, the court inserted the quoted words, and makes a point thereof, we find nothing in the record to show such words were inserted by the court, and find no exception or objection to that effect on the part of the appellant. Therefore, we must consider that appellant's own Instruction 8 contained the same words objected to, and appellant is, therefore, in no position to complain. We, therefore, hold that there is no merit in appellant's objections to respondent's Instruction D-A, nor to the alleged insertion by the court in appellant's Instruction 8.

By reason of the foregoing, the judgment of the Circut Court herein should be affirmed. It is so ordered. All concur.