Peggy Sue SMITH, Respondent (Plaintiff),

v.

Mary K. SMITH, Appellant (Defendant),

and

Metropolitan Life Insurance Company
Respondent (Defendant).

No. 22775.

Kansas City Court of Appeals.

Missouri.

June 2, 1958.

**754**

James Daleo, Jack L. Simms, Kansas City, for appellant.

Rufus Burris, Independence, W. F. Daniels, Fayette, for respondent.

Henry G. Eager, Blackmar, Swanson, Midgley, Jones & Eager, Kansas City, for respondent Metropolitan Life Insurance Company.

CAVE, Judge.

Plaintiff sued the Metropolitan Life Insurance Company on a certain life insurance policy, and made Mary K. Smith a defendant because she claimed an interest therein. Various pleadings were filed, resulting in the insurance company filing a bill of interpleader; paying certain money into court; and asking that plaintiff Peggy Sue Smith and defendant Mary K. Smith interplead therefor. They filed pleadings claiming the proceeds of the policy.

The cause was tried by the court without a jury, resulting in a judgment in favor of Peggy Sue Smith, and Mary K. Smith perfected her appeal. The amount involved is less than $7,500, and this court has jurisdiction. Secs. 3 and 13, Art. V, Const., V.A.M.S.

There were no findings of fact or declarations of law. We shall review the case upon both the law and the evidence as in suits of an equitable nature, and reach our own conclusions, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. Sec. 510.310(4), V.A.M.S., 1949; In re Petersen's Estate, Mo., 295 S.W.2d 144.

There were certain facts stipulated and we will set them out first as giving an overall picture of the basis of the controversy. It is conceded that on August 1, 1951, the Metropolitan Life Insurance Company issued its policy No. 18 763 898, insuring the life of one Joseph R. Smith, Sr., for $5,000; that his wife, Peggy Sue Smith, was named primary beneficiary therein, and his infant son, Joseph R. Smith, Jr., was named contingent beneficiary; that the insured reserved the right to change the beneficiary, without the beneficiary's consent; that he did, on Oct. 26, 1953, change the beneficiary from his wife to Mary K. Smith, his mother; that on May 13, 1956, the insured died; and that on May 17, Mary K. Smith signed and executed the following writing:

"May 17, 1956

"Metropolitan Life Insurance Company
"Re: Policy 18 763 898 AM—Insured, Joseph R. Smith, Sr.

"The above policy insures my son who died May 13, 1956. His wife,

Peggy Sue Smith, and their son, Joseph R. Smith, Jr., were the primary and contingent beneficiaries. In August, 1953, during a short period of separation, he designated me, Mary K. Smith, and his son primary and contingent beneficiaries. Following their reconciliation he neglected to re-designate his wife and son beneficiaries.

"It is agreeable with me to waive all my present and future benefits on this policy to my daughter-in-law, Peggy Sue Smith.

"Signature Mary K. Smith".
"Witness A. C. Owen, Mgr."

It is also conceded that on June 5 Mary K. Smith executed the following writing:

"June 5, 1956
"Metropolitan Life Insurance Company

"Re: Policy 18 763 898 AM—Insured, Joseph R. Smith, Sr.

"Under date of May 17, I submitted and signed the following statement:

" 'The above policy insures my son who died May 13, 1956. His wife, Peggy Sue, and their son, Joseph R. Smith, Jr., were the original primary and contingent beneficiaries. In August, 1953, during a short period of separation, he designated me, Mary K. Smith, and his son primary and contingent beneficiaries. Following their reconciliation he neglected to re-designate his wife and son beneficiaries.

" 'It is agreeable with me to waive all my present and future benefits on this policy to my daughter-in-law, Peggy Sue Smith.'

"Due to certain family circumstances I wish to cancel the above statement and agreement and request that the entire proceeds on this policy be paid to me as I am the deceased's mother and designated beneficiary.

"A. C. Owen, Mgr.　Mary K. Smith
"Witness　　　　　Signature."

For brevity, Peggy Sue Smith will hereafter be referred to as the wife, and Mary K. Smith as the mother; and the written instrument dated May 17 will be referred to as the first writing, and the one dated June 5, as the second writing.

There is little material conflict in the oral testimony of the facts leading to the execution of the first writing. Shortly after the insured's death, the wife took the policy to the office of A. C. Owen, who was district manager of the insurance company, for the purpose of making proof of death. She did not know of the change of beneficiary, and was in the act of making proof of death when Owen discovered the change and advised her of that fact. She was quite surprised and upset. He suggested that she contact the mother and see if the matter could not be "worked out". The wife went to the home of the mother and told her of the change of beneficiary, which the mother knew, and "I asked her if she would sign it over to me, and she agreed that she would, that Joe, my husband, had wanted me to have the money and he had just neglected to have it changed". Concerning this conversation, the mother testified that she told the wife "we will work out something". They returned to Owen's office and discussed the situation and what could be done to assure the wife of receiving the proceeds of the policy. Owen testified that "I asked Mary K. Smith if she would consent to waive her interest in the policy in favor of her daughter-in-law. * * * The conversation was very amicable * * * and Mary K. Smith told me it was alright." Whereupon he prepared the first writing, and the mother signed it. At the same time, she also signed the proof of death, and the policy was delivered to Owen and he forwarded such instruments to the home office in New York. Before the proceeds were paid to the wife, the mother learned that her son had another policy in which his wife was beneficiary, and she went to Owen's office and stated that she had changed her mind and wanted to cancel the first writing. He prepared, and she

signed, the second writing, and this was forwarded to the home office. As a result, the insurance company refused to pay either claim, and this proceeding followed.

On appeal, Mary K. Smith contends that the court erred in the judgment rendered because, (1) there was no consideration to support the first writing if it is construed to be an assignment or waiver for value of her rights; and (2) that the evidence is insufficient to establish a gift or transfer of any kind, legal or equitable, of her right to the proceeds of the policy. More specifically, she argues that the subject matter of the assignment or gift is the *proceeds* of the policy. We think this is a misconception.

At the death of the insured, the mother's rights, as the named beneficiary in the policy, became fixed and vested; John Hancock Mutual Life Ins. Co. v. Dawson, Mo.App., 278 S.W.2d 57, 61. These rights represented an interest in a chose in action; that is, the right to the proceeds of the policy, or the right to sue therefor if necessary. All the courts hold that a life insurance policy is a chose in action; and like any other such instrument, may be the subject of a gift by assignment; and no consideration is necessary if the transaction meets the essentials of a gift inter vivos. 33 A.L.R.2d 277; 38 C.J.S. Gifts § 31, p. 809; 45 C.J.S. Insurance § 424, p. 46.

Certain fundamental principles concerning gifts must be kept in mind. In order to be effectual, a gift inter vivos must be fully executed. A mere intention to make a gift, however clearly expressed, which has not been carried into effect, amounts to nothing, and confers no rights in the subject matter of the proposed gift on the intended donee. 38 C.J.S. Gifts § 16, p. 793; Smith v. Smith, Mo.App., 192 S.W.2d 691. It is also held that there must be a delivery, actual, constructive, or symbolical, of the thing given, with intent to relinquish all dominion thereof, by donor to a donee, to constitute an irrevocable gift.

But where the gift is evidenced by some writing of the donor which is delivered to the donee, physical delivery of the property is not always requisite, if the donee already has possession, or if it is impracticable to make manual delivery. 38 C.J.S. Gifts §§ 22, 23, pp. 802, 803; In re Harlow's Estate, 239 Mo.App. 607, 192 S.W.2d 5, 11.

There is another general rule relative to delivery; and that is, that delivery of the property to a third person as agent or trustee, for the use of the donee, and not as agent of the donor, under such circumstances as indicate the donor relinquishes all dominion and control over the property, is a sufficient delivery to complete the gift. 38 C.J.S. Gifts § 25, p. 805; and In re Hartley's Estate, Mo.App., 54 S.W.2d 429, 430.

No special words are necessary to constitute a gift if the donor's intent clearly appears. There is no issue of fraud or mistake presented on this appeal.

The mother argues that there was no effectual gift because, (1) under the circumstances, there was no intention to give *in praesenti,* but merely an intention to give in the future; and (2) that there was no delivery of the *property,* which she contends is the *money* or *proceeds* due under the policy.

We think there is no merit in the contention that the mother did not intend to relinquish her rights *in praesenti.* At the time she signed the first writing, she knew that her son desired that his wife receive the proceeds 'of the policy, because that instrument recites that he "neglected to redesignate his wife and son as beneficiaries". To accomplish this purpose, the mother and wife went to Owen's office, and he explained to them what, in his opinion, was necessary to be done to accomplish the transfer of the mother's rights to the wife. Thereupon the mother signed the first writing; also signed the proof of death certificate furnished by Owen; and the policy, the proof of death, and the first

writing were delivered to Owen, to be sent to the home office of the insurance company for processing and payment. This evidence supports a finding that the mother had the *present intention* of relinquishing and making a gift of her rights under the policy.

 A more serious question is whether there was a sufficient delivery of the subject matter to complete the gift by assignment.

We do not agree with the mother's contention that the *proceeds* of the policy represent the *subject matter* of the gift. The only thing that the mother had at the signing of the first writing was a vested interest in the policy; a chose in action; and this was the subject matter of the gift. The policy was a contract evidencing the obligation to pay according to its terms. It partakes of many features of a promissory note. When the mother executed the first writing; signed the proof of death; and the policy, together with those two instruments were delivered to Owen in the presence, and with the knowledge and consent of the wife, everything was delivered that could be delivered or was necessary to be delivered.

The mother relies heavily on Foulke v. Hickman, Mo.App., 259 S.W. 496. This case is not controlling because the court, under the facts, construed the writing to be a mere order or direction on a third party to pay certain money to the donee and that such a direction could be withdrawn before the payment of the money. Referring to the writing, the court said (at page 498): "It could reach no higher dignity than an expression of an intention to make a gift in the future, and all the authorities agree that such an intention binds no one and may be recalled any time before the consummation of the expressed intention by delivery to the donee of the thing intended to be given, * * *". That is a correct statement of a well recognized rule, but it is not applicable under the facts in the present case, because "the thing intended to be given" was delivered; and there was no intention or need to do something in the future.

This being a valid gift, it is unnecessary to discuss the issues of assignment or waiver for value.

The judgment is affirmed.

All concur.