Rodney E. WHAN et al.,
Plaintiffs-Appellants,

v.

Bertha A. WHAN et al.,
Defendants-Respondents.

No. 36914.

Missouri Court of Appeals,
St. Louis District,
Division One.

July 20, 1976.

Motion for Rehearing and for Transfer to
Supreme Court Denied Sept. 30, 1976.

Application to Transfer Denied
Nov. 8, 1976.

relations of the parties under a contract between the parties. Appellants also sought specific performance of the contract. Defendant-Respondent Bertha Whan filed a counterclaim alleging fraud, misrepresentation, and duress on the part of plaintiffs-appellants in inducing her to enter the contract and sought to have the agreement nullified. A separate jury trial was had on respondents' legal claim with a final judgment entered on June 27, 1973 for appellants. Respondents failed to perfect an appeal from this judgment. The trial court then took further evidence on appellants' equitable claim and entered an order on January 9, 1975, setting out the rights and relationships of the parties under the contract. It is from that order that this appeal was taken. We affirm in part and reverse in part.

The controversy which precipitated the filing of this lawsuit arose over an agreement entered into by the members of the Whan family. Respondent Bertha Whan is the mother of appellants Rodney Whan and Homer Whan and of respondents Elmer Whan, Stella Knight and Lois Kurk. Appellants Delah Whan and Pauline Whan are the wives of Rodney and Homer Whan. Respondent Robert Kurk is the husband of Lois Kurk. Upon the death of a brother, Orval Whan, the appellants initiated discussions which led to the signing of the agreement. This agreement provided for all of the assets, which Orval Whan owned at the time of his death, to be placed in a savings account, with the interest going for the support of the mother. From this interest the mother was to receive up to $3,000 semiannually, with the provision for an invasion of the principal to meet the mother's needs if all of the children agreed to the expenditure. Upon the death of the mother, the remaining funds were to be divided equally among the children.

A dispute arose as to which of the funds held by the various family members were to be placed into the fund. The appellants then filed suit and Bertha Whan filed her counterclaim. In its order setting forth the rights and legal relationships of the parties,

William E. Alberty, Edina, Zenge & Smith, Canton, for plaintiffs-appellants.

Wasinger & Parham, Hannibal, Goehl, Adams & Schuering, Quincy, Ill., for defendants-respondents.

McMILLIAN, Judge.

Plaintiffs-Appellants brought suit seeking a declaration of the rights and legal

the trial court determined that the agreement created an express trust in all property, real and personal, owned by Orval Whan at the time of his death. Mrs. Bertha Whan was the life beneficiary, the children were the trustees and residuary beneficiaries. The primary purpose of the trust was to provide for the care of Bertha Whan until her death.

The court found that $1,658.75 which Bertha Whan received upon reselling tools purchased from Orval Whan's estate, and $22,-000.00 which Mrs. Whan received as beneficiary of Orval's life insurance policy, were her own property and not subject to the agreement. The court also found that $6,000 which Bertha Whan had placed in a savings certificate in the names of Orval Whan, Elmer Whan and Stella Knight, was placed with the intention of all the parties that Mrs. Bertha Whan was to retain the beneficial interest therein, and therefore, a resulting trust was declared in favor of Bertha Whan as beneficiary with Elmer Whan and Stella Knight as trustees. These resulting trust funds were, therefore, not subject to the agreement as Orval Whan held only legal title at the time of his death.

The court removed the children as trustees and appointed a disinterested third party as trustee after finding that implacable hostilities existed between the co-trustees and between certain trustees and the primary beneficiary, that there had been a breach of duty on the part of the trustees, and that there was a personal interest in the corpus of the trust on the part of the trustees which conflicted with the interest of the primary beneficiary.

The court's order also included an accounting of those funds which were subject to the trust agreement and a declaration that Bertha Whan was entitled to all interest accumulated on the trust funds.

■ Appellants raise eighteen points on appeal. We will consider some of these points together as they raise different aspects of the same issue. In our review of the issues we are guided by Rule 73.01 under which the decree of the trial court is to be sustained unless we find no substantial evidence to support it, or that it is against the weight of the evidence, or that it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

■ Appellants' first issue is that the trial court erred in entering its decree on January 9, 1975, because it had entered a final judgment on September 21, 1973, and there can be but one judgment in a suit. We find this contention to be without merit. The court tried respondents' legal counterclaim before a jury and made that judgment appealable. It then took more evidence and entered a decree on appellants' equitable claims. Rule 66.02 expressly allows this type of separation by a trial court and Rule 81.06 (formerly Rule 82.06) allows a trial court to make such separate judgments appealable. For a second judgment to be void the first judgment must have fully decided and disposed of all of the merits of the cause. *State v. Randall*, 423 S.W.2d 765, 769 (Mo. banc 1968). The jury verdict in the present case cannot be said to have done this. The granting of separate trials of any claims or issues is discretionary with the trial court and its rulings will be disturbed only if the discretion is abused. *B–W Acceptance Corp. v. Benack*, 423 S.W.2d 215, 217 (Mo.App.1967). We find no evidence of any such abuse of discretion here.

Appellants' second point is that the court erred in entering its order of January 9, 1975, after it had found a valid and binding agreement on September 9, 1973, because its later order had the effect of rewriting the contract and nullifying the intent of the parties. In the prayer of their amended petition, the appellants asked the trial court to, ". . . make a finding and declare the rights of the parties under the terms of the contracts. . . ."

■ While courts cannot rewrite the terms of contracts that are clear and unambiguous, construction is proper when necessary. The contract before the trial court was clear, but there was much disagreement as to the exact property which was to

be subject to the contract. The dispute could not be resolved by looking to the document itself. The contract states that, "All property . . . owned by Orval Whan at his death or held jointly by Orval Whan and any of the other children or the mother . . ." would be subject to the agreement. This term required a determination by the court as to which property it was that Orval Whan owned at the time of his death. The determination of which property was owned by Orval Whan was a question of legal fact, not subject to interpretation by the parties. The appellants cannot now, after having requested aid in the application of this contract, be allowed to argue that the court was without the power to make such a decree.

Appellants' third point is that the court erred in removing Rodney and Homer Whan as trustees because the evidence showed that they had done everything they could to try to get the contract carried out and that the order of the court in removing them penalized them when they were not at fault. Appellants' points seven, eight, nine, ten, eleven, twelve and fourteen, also involve allegations of error in the removal of the children as trustees and the appointment of a third party as trustee. We will consider these points together. The specific allegations raised by appellants in these points are: that the court erred in finding that it had the power to remove the trustees as this removal defeats the purpose of the parties as expressed in their contract; that there was no evidence that the appellants had breached their duties; that there was no evidence that implacable and settled hostilities existed between the parties; that the court erred in finding the trustees occupied antagonistic relations with the trust property; that there was no evidence that the trustees lacked the capacity to cooperate or agree in the administration of the trust; that the court erred in finding it detrimental to the interest of Bertha Whan for the trustees to act because there is no evidence that she would not be fully protected; that the court erred in appointing a new trustee as this constituted a rewriting of the contract without the consent of the

parties and caused unnecessary expense to the trust.

■ Appellants do not contend that the court erred in finding that the contract created an express trust between the parties. It has long been the law in this state that courts of equity have inherent jurisdiction over express trusts. *Simmons v. Friday*, 359 Mo. 812, 224 S.W.2d 90 (1949); *Kimpton v. Spellman*, 351 Mo. 674, 173 S.W.2d 886 (1943), and they may take all needful steps to prevent failure of trusts, *Kimpton*, supra, at 890 and *State v. Johnson*, 229 Mo.App. 16, 68 S.W.2d 858, 861 (1934).

■ Appellants argue that even with this general power, a court of equity may not order the removal of the trustees unless some kind of a petition for their removal is filed. *Powers v. Johnson*, 306 S.W.2d 616 (Mo.App.1957). While we agree with this as a correct general statement of the law, the *Powers* case, supra, at 622–3, went on to hold that where the question of the conduct of the trustees was sufficiently raised, a court acting in equity had the authority to order the removal of trustees notwithstanding the fact that the prayer for relief did not contain a request for removal. In *Powers* the court based its finding that the petition was sufficient on two factors; first, that the conduct of the trustees was sufficiently raised; secondly, that the relief actually prayed for would have resulted in a change of control of the trust. In the present case, the counterclaim of respondent Bertha Whan raised the issue of the conduct of the appellants. Her answer to appellants' amended petition sought to have the court declare the trust creating contract to be a nullity, thereby wresting control of the trust funds from the appellants. We cannot say, therefore, that the trial court erred in finding that the issue of removal of the trustees was before it.

■ We now turn to the question of whether there was sufficient evidence before the court to justify the removal of the trustees. Appellants argue that mere hostility alone between the beneficiary and

trustees is not usually, in and of itself, sufficient grounds for removal of a trustee. *Vest v. Bialson*, 365 Mo. 1103, 293 S.W.2d 369, 382 (1956) and *Morrison v. Asher*, 361 S.W.2d 844, 852 (Mo.App.1962). Such hostility, coupled with other conduct, is, however, grounds for removal. *Morrison*, supra, at 852. A trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary. *Hillyard v. Leonard*, 391 S.W.2d 211, 223–4 (Mo.1965) and *Estate of Luyties v. Scudder*, 432 S.W.2d 210, 214 (Mo.1968).

The evidence in the present case was that there was a great deal of hostility between some of the trustees and the lifetime beneficiary and between the trustees themselves. The trust was established in such a way that the very trustees who were hostile to the lifetime beneficiary were the residuary beneficiaries of the trust, creating an obvious conflict of interest. While such a conflict of interest alone need not compel a court to remove trustees, the hostility in this case, coupled with the conflict created a situation into which the court was required to intervene if its obligation to protect the trust was to be carried out. There was also substantial evidence that the trustees breached their duty by refusing to place funds into accounts as required by the agreement. We therefore find no error in the removal of the trustees.

Appellants' third contention with respect to the trustee replacement is that the court erred in appointing a trustee as this in effect rewrote the contract and caused unnecessary expenses. We find this claim to be without merit. A trust will not be permitted to fail because the trustee named in the instrument creating it cannot administer the trust. A court of equity will appoint a new trustee. *Rawlings v. Rawlings*, 332 Mo. 503, 58 S.W.2d 735, 737 (1933). Having found that the agreement created a trust and that the trustees must be removed, the court was under an obligation to appoint a new trustee to avoid the failure of the trust.

Appellants' fourth issue on appeal is that the trial court erred in finding that $6,000 of a $9,000 savings certificate was the property of Bertha Whan. The court found that Mrs. Whan had placed the $6,000 into an account in the name of Orval Whan, payable on death to Stella Knight and Elmer Whan, with the understanding among the four parties that Bertha Whan was to retain the beneficial interest. The court declared that a resulting trust in favor of Bertha Whan existed prior to the death of Orval Whan and that since he held only the legal title as trustee, this $6,000 was not to be included among the property "owned by Orval Whan at his death."

The burden of proof is on the party seeking to establish a resulting trust and an extraordinary degree of proof is required. *Earney v. Clay*, 516 S.W.2d 59, 68–9 (Mo. App.1974). The evidence must be so cogent, convincing and clear that no reasonable doubt can be entertained as to the existence of a trust. *Earney v. Clay*, supra, at 69 and see also Scott, The Law of Trusts, § 405, 3d Ed. (1967).

The evidence offered at trial did not meet this high standard. The only testimony offered to establish that Bertha Whan was the source of the $6,000 deposit was from Stella Knight and Lois Kurk. The testimony of Mrs. Kurk was objected to as hearsay and the objection was sustained. An offer of proof was allowed. The statements of Stella Knight were allowed into evidence over objection on direct examination and were repeated in her responses on cross-examination. There was no testimony on this matter by either Bertha Whan or Elmer Whan, nor were any records produced to show the source of the $6,000 which was deposited in the certificate as cash. The testimony of Mrs. Knight on direct and cross-examination, without more, is not enough to overcome the heavy burden which those seeking to establish a resulting trust must meet. We therefore reverse the holding of the trial court and find that the $6,000 in question was owned by Orval Whan at the time of his death and is therefore subject to the trust agreement.

Appellants' fifth issue on appeal is that the court erred in finding that $1658.75, the sum which the three brothers paid Bertha Whan for some tools which she had purchased from the estate of Orval Whan, was the sole property of Bertha Whan and not subject to the contract. The appellants argue that the parties to the contract showed their intention that this money was to be governed by the terms of the contract by placing it in a savings account in the manner set forth in the contract. The conduct of the parties is a proper matter for courts to consider when construing contracts, as the prime objective of the court is to ascertain and render effective the mutual intent and understanding of the parties. *Leggett v. Missouri State Life Ins. Co.,* 342 S.W.2d 833, 852 (Mo. banc 1960). In the present case, however, the question of which funds were subject to the contract does not require a construction of the contract but a determination of the legal fact of ownership by the court. The conduct of the parties has no bearing on this determination of ownership—their conduct cannot alter which property was owned by Orval Whan at his death. These particular funds were not in existence at the time of Orval's death and were not, therefore, subject to the terms of the contract. The evidence showed that the mother purchased these tools from Orval Whan's estate, had them transported to Lewiston, Missouri, and auctioned them off between the three brothers. The trial court correctly found that the funds realized from this auction were the property of Bertha Whan.

Appellants' sixth issue, listed as points six and sixteen in their points and authorities, is that the trial court erred in finding that the $22,000 proceeds of an insurance policy were the sole property of Bertha Whan. Appellants argue that Bertha Whan voluntarily placed $20,000 of these funds in a joint account and should not be allowed to claim ownership as an afterthought. The issue of the conduct of the parties is, again, not controlling in a determination of the status of this property.

Missouri courts have held that a beneficiary has a vested right in the proceeds of an insurance policy, such rights vesting at the very moment an insured dies. *Smith v. Smith,* 313 S.W.2d 753, 756 (Mo. App.1958) and *John Hancock Mut. Life Ins. Co. v. Dawson,* 278 S.W.2d 57, 61 (Mo.App. 1955). The contract involved in the present case affected all property owned by Orval Whan at the time of his death. Since the insurance policy in question was payable to a beneficiary other than Orval Whan's estate, it cannot be said that he owned the proceeds at his death. The trial court, therefore, correctly found that the proceeds were the sole property of Bertha Whan.

The seventh issue on appeal, labeled thirteen in appellants' points and authorities, is that the trial court erred in failing to make an order concerning an eighteen acre tract of land referred to in the contract. The contract provided that, "Orval Whan died possessed of certain property, real and personal, in Moline, Illinois, and Lewis County, Missouri. Among that property may have been a tract of land approximately Eighteen and One-Half (18½) acres purchased by Orval Whan and Elmer T. Whan from one Elmer Scott. If Orval Whan was the legal owner of any part of this tract of land in Lewis County, Missouri, the children and mother hereby agree and covenant that they will make, execute and sign any necessary deeds or other conveyances so that Elmer T. Whan will be the sole owner of said property."

We find that the trial court committed no error in omitting mention of this property since the contract term was clear and not subject to interpretation; the contract had been previously found to be valid; and there was no evidence which might have otherwise affected this piece of property. The parties are therefore bound by the terms of their agreement in regards to this piece of property.

The eighth issue raised by appellants as point fifteen in their brief is that the trial court erred in finding Bertha Whan entitled to all of the interest from

**14**

the trust fund, because this was inconsistent with the terms of the contract. Appellants argue that the contract provided for her to have her checking account brought up to the sum of $3,000 twice a year, but no place did it provide for her to get all of the interest in a lump sum.

The trial court took evidence which established that during the period subsequent to the signing of the contract Bertha Whan had incurred expenses of $59,162.10 without receiving any of the semi-annual interest payments that were provided for in the contract. In order to meet these expenses, Mrs. Whan was required to expend her own funds, contrary to the intent of the parties as expressed in the trust agreement. We find that the trial court committed no error in exercising its equitable powers to supervise the trust in this manner.

■ Appellants' ninth issue raised as point seventeen in their brief, contends that the court erred in entering judgment as it did because the evidence clearly shows that the respondents have control of Bertha Whan and the ruling plays into their hands and permits them to further erode her property for their benefit, all contrary to the letter, spirit, and intent of the contract. We find no merit to this vague claim. The court's ruling has the effect of reducing the amount of property which appellants feel should be subject to the agreement. The evidence at trial showed that a great deal of hostility existed between appellants and respondents. The effect of the court's ruling may well be that the amount of money which appellants will receive upon the death of Bertha Whan will be reduced. Mrs. Whan may choose to dispose of her own property in some manner other than an equal division among her children. The evidence did not show that any individual or group had "control" of Mrs. Bertha Whan, nor was the ruling of the court contrary to the agreement of the parties. The court found the agreement created a trust in favor of Mrs. Bertha Whan and sought to fulfill its obligation to protect that trust.

■ Appellants' final issue is that the court erred in entering the judgment as it did because it permits the respondents to win even though they lost the suit on the contract and on their counterclaim. We find no such error. Appellants' amended petition requested the declaration and accounting made by the trial court. The finding by the jury that the contract was valid did not affect the power of the court to make a determination of which property was and was not subject to the agreement.

We therefore affirm all of the findings of the trial court with the exception of the $6,000 which the court held to be the sole property of Bertha Whan by operation of a resulting trust. We hold that the $6,000 is subject to the agreement made by the parties.

Accordingly, judgment is affirmed in part and reversed in part.

WEIER, P. J., and DOWD, J., concur.